Mr. Justice Scott delivered the opinion of the Court. It has been urged, with much earnestness, in this case, that the indictment is bad because the defendant is charged with an assault and battery with intent to murder, and not with a mere assault with that intent, and it is submitted that this excess changes the character of the offence, and it thereby defeats the indictment. Our first inquiry, then, must be of this objection. And, as a general proposition, it would seem clear that a mere extended and minute narration in an indictment of the actual facts that have transpired in the commission of an offence could not of itself make the indictment vicious; and that, unless there was something in the manner of the narration to make the indictment bad by reason of some defect as to this, as, for instance, to make it uncertain, double, or repugnant, it would be as good when the facts had been narrated with unnecessary minuteness, as if only such leading facts had been charged as were necessary: and equally clear that the defendant could not by possibility be injured by any such minuteness of narration; on the contrary, would be benefited in being thus more distinctly and particularly advised of the specific charge against him, and thereby enabled the better to prepare for his defence, and afforded more certain means of pleading, to a subsequent prosecution grounded upon the same facts, a former acquittal or conviction, and could claim, at most, under such circumstances, that the State should be held to proof of the charge as laid. ’When by any unlawful act an individual has violated the criminal law, it is not for him, but for the State, to elect what particular offence she will proceed for with a view to punishment according to the laws of the land. He can claim only that he be prosecuted for the charge made against him according to law, and that he be not twice prosecuted or put in judicial jeopardy for the same act. It is not for him to say, when the act done may properly ground any one of several prosecutions, that this or that shall be set on foot against him, because in such case he is equally obnoxious to all of them: but he is more than compensated for this privilege on the part of the State by the provisions in his favor in the bill of rights to which we have alluded. Nor do these general principles apply only to offences which, in their nature, are included the one within the other, as the major includes the minor, but to all offences. When, therefore, as it will be at once conceded, a party indicted for an assault with the intent to murder has no right to' claim that the State shall abandon that prosecution and proceed against him for the simple assault merely, can it be at all more reasonable that, when he has committed an act that will equally ground a prosecution for such an offence as well as for mayhem, he shall have any such right? Unquestionably no. And all that he can claim in either case, as we have already remarked, is, that he be charged, tried, and punished, according to the law of the land, for whatever offence the State may elect to proceed for in the premises, that the act he has done may lawfully ground. If the act done will equally ground several prosecutions, the manner of narrating the facts in making the charge elected, mast be such as to indicate with precision for what offence the State proceeds, otherwise the indictment would be bad, and so it would in like manner be bad if it fell short of the requirements of the law in the proceedings elected and on foot, either in the matter or manner of presenting it. But it does not follow, from this, that, simply because in such a case the pleader had not been content with properly charging facts, but has gone beyond them, and indulged in unnecessary detail of the actual facts that transpired in the case, this would make the indictment bad; yet, doubtless, if this excessive narration were made in a manner to produce uncertainty, duplicity, repugnancy, or other material defect in a charge that would have been other-wise well made, the indictment would be thereby made vicious; but unless this should be the result such excessive narration could not by possibility should be productive of any thing beyond an obligation on the part of the State to produce corresponding testimony, and would not in all cases have that effect. In the case before us, the excessive charge is that the defendant feloniously cut, stabbed, and wounded the prosecutor, and the substance of the whole charge is that he feloniously assaulted the prosecutor with the intent to murder, and incidentally feloniously cut, stabbed, and wounded him. This excessive matter, so far from being repugnant, is confirmatory of the antecedent charge of a felonions assault, and is, in effect, but a re-iteration of it because in its nature it includes the former and falls short of a charge of mayhem in wanting some of the ingredients of that offence, and therefore does not make the indictment double. Nor does it make the charge uncertain, because there is no such offence known to the law as an assault and battery with the intent to murder; and, therefore, when the charge is made in these terms, it is in legal effect but a charge of assault with that intent. We are of opinion, therefore, that there is nothing in this objection. Nor was there any error in so much of the judgment of the Court as fixed the time for the commencement of the term of imprisonment in the Penitentiary. In this, the judgment was responsive to and followed the verdict. There would seem to be more difficulty, at first blush, as to the point raised by counsel and sustained by Cruse's case, 8 Car. & Payne 541, that, as to the intent to commit murder, it is not sufficient that the offence would have been murder had death ensued; but. the jury must be satisfied that the defendant had a positive intention in his mind to commit murder at the time of the assault. But, upon examination, the grounds of this question will be found to be a mere abstraction with respect to the offence of an assault with intent to murder, because that class of cases where in actual murder the offence by possibility could be perpetrated without the existence of a clear and positive intention of fact to kill — such as cases of excessive chastisement with means not calculated to produce death — would never be the subject of prosecution for assault with intent to kill; and, therefore, it is sufficient for us to say, as to this point, as was held by the Court in the subsequent case in England of Regina vs. Jones, 9 Car. & P. 258, that in every case of a prosecution for assault with intent to murder, where the proof shows that it would have been murder had death ensued, that itself will be a sufficient ground for the jury to infer the existence of the actual intention to murder, as every one must be taken to intend the necessary consequences of his own act. The other two objections, however, touching the rendering of the verdict and judgment in the absence of the defendant, seem tenable and well supported by authority. The statute provides that no indictment for a felony shall be tried unless the defendant be personally present during the trial. (Dig. 412, sec. 164.) And the act of the Legislature, approved the 18th December, 1848, defines felonies to be all crimes or of-fences which are punishable capitally or by imprisonment in the Penitentiary, or when any portion of the punishment is such. (Pamph. Acts, p. 28.) And the authorities are numerous and pointed that when any judgment of corporal punishment is to be inflicted on the defendant, he must be personally present in Court at the time of pronouncing the sentence. (1 Ch. Cr. Law 695, and cases there cited in notes. 7 Cow. R. 525, and note. 12 Wend. 849, and cases there cited. 3 Smedes & Mar. 518.) And this corporal punishment seems to mean any kind of corporal privation or suffering, which is inflicted by sentence directly by way of penalty for the offence, and consequently includes imprisonment as well as the pillory. (1 Ch. Cr. Law 799, 712.) It is in contradistinction to fine, (1 Salk. 56. Lofft 400,) and the power of sentencing in absence seems to be confined to cases of fine exclusively. If, however, the verdict was delivered in the presence of the defendant, and the irregularity consists simply in pronouncing sentence in his absence, the consequence would not necessarily be the awarding of a new trial, but only a reversal of the judgment and a remanding of the cause with instructions to proceed to pronounce judgment in accordance with the verdict after having inquired of the defendant whether he had any thing further to say why the judgment of the Court should not be then pronounced, as was done in the case of Kelly & Little vs. The State of Mississippi, 3 Smedes & Mar. 518. And the authorities are equally numerous, pointed, and respectable, that, in all cases of treason and felony, the verdict, whatever may be its effect, must be delivered in the presence of the defendant in open Court, and cannot be either privily given, or promuled, while^he is absent, and if he does not appear the jury must be discharged without rendering it. (1 Ch. Cr. Law 636. 1 Breese 109. Overton’s Tenn. Rep. 435. The People vs. Perkins, 1 Wend. 91.) And the defendant’s being but of bail ■does not alter the'case. State vs. Hulbert, 1 Root 91. Sneed vs. The State, 5 Ark. 432. Although many of the ancient forms on trials have fallen into disuse in modern times, those touching the presence of the defendant, both at the time of the rendering of the verdict and judgment in treason and felonies, including, as they do, substantial rights — that of the right to poll the jury, the making of any proper objection to the recording of the verdict, and of an-severing further why judgment and sentence should not be pronounced — and designed, as they are, to throw additional safeguards around the proper administration of criminal justice in having the defendant and those who are to pass upon his case and pronounce the sentence of the law face to face, are not to be dispensed with. This last objection, then, going deeper than the other, and affecting the verdict as well as the judgment, was sufficient to have authorized the Court below to grant a new trial, and in refusing the motion of the defendant for the new trial the Court below clearly erred. But, because the judgment must be reversed, and a new trial awarded for the error we have pointed out, and this case must again be put before a jury, we designedly refrain from examining the question raised upon the merits, as we cannot decide them,without, in some way or other, influencing the future trial. Let the judgment be reversed, a new trial awarded, and the cause remanded to be proceeded with.